STEVEN KNEIZYS, PLAINTIFF, PRO SE
2 MUIRFIELD LANE, LEBANON, NJ 08833
(610)256-1396
SKNEIZYS@YAHOO.COM



# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

**2:19-cv-01499-GMN-DJA**

| | |
|---|---|
| Steven Kneizys | ) |
| | ) |
| Plaintiff | ) Jury Trial Demanded |
| | ) |
| -v- | ) |
| | ) |
| Federal Deposit Insurance Corporation, as | ) |
|    Receiver for Washington Mutual Bank, | ) |
|    Henderson, Nevada, | ) |
| Elizabeth Rice, | ) |
| Norman Morrison, | ) |
| Franklin Morrison, | ) |
| James Bohanon, | ) |
| James McLaughlin, | ) |
| Vicki McLaughlin | ) |
| | ) |
| Defendants | ) |
| | ) |

**COMPLAINT FOR:**
   **1) BREACH OF COVENANT OF WARRANTY**
   **2) BREACH OF COVENANT OF QUIET ENJOYMENT**
   **3) BREACH OF IMPLIED WARRANTY OF MARKETABLE TITLE**
   **4) REFORMATION OF TITLE**
   **5) DECLARATORY RELIEF**

NOW COMES the Plaintiff, Steven Kneizys ("PLAINTIFF"), as a result of the eviction from

land in MACSC-RE-2016-13 (Washington County, Maine, Superior Court in Machias), from a

competing claim related to 4 First Avenue, Baileyville, (the four parcels A, B, C and D to be more particularly describe herein,) complaining of the defendants as named above, respectfully alleging, as follows:

## JURISDICTION AND VENUE

1. This is a Federal Question suit brought under 28 U.S. Code § 1331.

2. The court has Subject Matter Jurisdiction and it is an appropriate venue under 12 U.S. Code § 1821(d)(6), having exhausted administrative remedies under § 1821(d).

## PARTIES

3. Plaintiff is now, and at all times relevant to the action, a resident of the County of Berks, State of Pennsylvania, with a temporary address of:

Steven Kneizys
2 Muirfield Lane
Lebanon, NJ 08833
(610) 256 1396

Plaintiff is the grantee of property as successor in interest to a Warranty Deed conveyance from Washington Mutual to Joyce Lizotte (a/k/a Joyce Earle; see Exhibit G, and Exhibits H, H-1, and I, where Plaintiff is the grantee).

4. Federal Deposit Insurance Corporation, ("FDIC") as Receiver for Washington Mutual Bank ("WAMU" or "Washington Mutual"), is a named party because of a Mortgage (See Exhibit L,) the subsequent foreclosure (see Exhibit F) and finally the conveyance to Joyce Lizotte (Exhibit G.) Agent for Service within the Dallas Region:[1]

Victoria Dancy
Regional Counsel
Federal Deposit Insurance Corporation
1601 Bryan Street
Dallas, Texas 75201

---

[1] Information obtained from web site https://www.fdic.gov/about/contact/agents/index.html

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

U.S. Attorney for the District of Nevada
501 Las Vegas Boulevard South
Suite 1100
Las Vegas, NV 89101

5.   Elizabeth Rice, a/k/a Betty Rice, birth name Elizabeth Morrison, is, inter alia, heir to Alfreda Morrison who had mortgaged the property (Exhibit L) to Washington Mutual. Her Address is:

Elizabeth Rice
57 Spring Street
Calais, ME 04619

6.   Brothers Norman Morrison, Jr. and Franklin H. Morrison, are the heirs to Norman R. Morrison Senior (who was the brother of Elizabeth Rice and son of Alfreda and Harold Morrison.) They may both be reached at Elizabeth Rice's Address:

Norman Morrison, Jr          Franklin H Morrison
57 Spring Street             57 Spring Street
Calais, ME 04619             Calais, ME 04619

7.   James "Jamie" Bohanon is heir to Alton "Jimmy" Bohanon. Alton, who passed away April 7, 2013, was the purported Grantee to Parcels C and D (see Exhibit R), which are the main parcels in controversy. James Bohanon is named as he is a necessary party to "Deed Reformation" and "Declaratory Relief" as his interests are affected.

James Bohanon
31 Main St / PO Box 144
Baileyville, ME 04694

8.   James McLaughlin and Vicki McLaughlin, husband and wife, are listed as Grantees (see Exhibit T) to the main parcels in controversy and are thus necessary parties to

"Deed Reformation" and "Declaratory Relief". Their street address is:

> 772 Houlton Road (US 1)
> Baileyville, Maine 04694

## INTRODUCTION AND BASIC FACTS

9.  The property is located at 4 First Avenue, Baileyville, Washington County, Maine. As owned by Alfreda Morrison (see Exhibits A, K) it was collectively known as Map 20, Lot 60, on the Property Map of the Town of Baileyville, Washington County, Maine. The parcels the Tax Assessor carved out into what they are now calling "Map 20, Lot 60A", are described as follows:

**Parcel C:**

A CERTAIN LOT OR PARCEL OF LAND, SPECIFICALLY LOT # 9 AND ALSO LOT #10 ON THE EASTERLY SIDE OF WASHINGTON STREET IN THE VILLAGE OF WOODLAND AS SHOWN ON A PLAN OF THE VILLAGE OF WOODLAND BY WARREN C. LOUD, SURVEYOR, AND FILED IN THE WASHINGTON COUNTY REGISTRY OF DEEDS IN PLAN BOOK NO. 3, INSERT 60.

**Parcel D:**

A STRIP OF LAND LOCATED ALONG THE WESTERLY BOUNDARY OF LOT 60, AS SHOWN N THE TAX MAP 20 (BAILEYVILLE TAX MAPS), BEING THE EASTERLY HALF OF THE UNBUILT STREET OR WAY SHOWN ON SAID TAX MAP OF 1977 AS LOT 51, AND SHOWN ON THE WARREN C. LOUD PLAN OF
WOODLAND AS PART OF WASHINGTON STREET ALONG LOTS 9, 10 AND 11, BEING 25 FEET IN WIDTH AND 150 FEET IN LENGTH FROM FIRST AVENUE.

Parcels C and D are known as Parcels 2 and 3, respectively, in the conveyance from Washington Mutual to Joyce Lizotte (Exhibit G). The other two parcels that were merged[2] into Tax Map 20, Lot 60 by the Baileyville Land Use Ordinance on October 1, 1997, have the description:

**Parcel A:**

LOT OR PARCEL OF LAND, SPECIFICALLY LOT # 11 ON THE EASTERLY SIDE OF WASHINGTON STREET IN THE VILLAGE OF WOODLAND AS SHOWN ON A PLAN OF THE VILLAGE OF WOODLAND BY WARREN C. LOUD, SURVEYOR, AND FILED IN THE WASHINGTON COUNTY REGISTRY OF DEEDS IN PLAN BOOK NO. 3, INSERT 60.

---

2  It is possible that only Parcels A, C and D were actually merged, as Parcel B was not specifically listed on the mortgage to St Croix (Exhibit E), thus it was not under "common ownership." If that were to be done, it would be like adding an ex-post facto covenant to the deed that the grantee could likely never honor as they were never granted that parcel.

4
COMPLAINT

**Parcel B:**

A STRIP OF LAND TEN (10) FEET IN WIDTH, RUNNING FROM FIRST AVENUE ACROSS THE REAR OF LOTS 29 AND 31, MAKING SAID STRIP 100 FEET IN LENGTH AND DECREASING LOTS 29 AND 31 TO A DEPTH OF NINETY FEET MEASURED BACK FROM BROADWAY. SAID CREATION OF THE STRIP AND CONVEYANCE OF THE REMAINDER OF LOTS 29 & 31 IS RECORDED IN THE WASHINGTON COUNTY REGISTRY OF DEEDS IN BOOK 774, PAGE 193, DATED SEPTEMBER 29, 1972.

10. To the best of Plaintiff's knowledge, the events occurred in the County of Washington, Maine. All recorded deeds in this complaint were recorded in the Washington County, Maine, Registry of Deeds. All references to Book and Page numbers refer to said registry. All "Old Lot" numbers refer to the lot numbers as shown on the plan of the Village of Woodland made by Warren C. Loud circa 1912 ("Loud Plan"), and filed in said registry in Plan Book No. 3, Insert 60.

11. Parcels A, C and D as described above were listed in the Warranty Deed from Washington Mutual to Joyce Lizotte (Exhibit G dated 9/21/2006) as Parcels 1, 2 and 3, respectively. Plaintiff is the latest grantee of this chain of title through WaMu, however, in MACSC-RE-2016-13 the court found (Exhibit 7, page 2) that

> By a deed September 21, 2006, Washington Mutual Bank, F.A. conveyed its interest in the mortgaged property to Joyce M. Earle, a/k/a Joyce M. Lizotte; (PSSMF ¶ 20).The description of the property conveyed included Lot 11 (Parcel A), and also included Parcels C and D, notwithstanding that Parcels C and D were not included in the mortgage from Alfreda to North American Mortgage Company. Id. As only Lot 11 was included in the mortgage, and only Lot 11 had been foreclosed upon, Joyce Lizotte acquired an interest in Lot 11 (Parcel A) only.

12. The vast majority of evidence in this case will come from the public records of the State of Maine, including but not limited to records of the Town of Baileyville, as well as the records filed with/through the Washington County Registry of Deeds. The "Appendix of Complaint Exhibits", Volumes I, II, and III, filed with this complaint is incorporated by reference, and contains the vast majority of the Plaintiff's Exhibits in MACSC-RE-2016-13.

13. The simplified series of events established herein, in roughly this order, are:

(a) At least 3 of the 4 parcels comprising Tax Map 20, Lot 60, were merged by Baileyville's Land Use Ordinance to create a dimensionally conforming lot under ownership by Alfreda Morrison
(b) As per subsequent finding of this court (Exhibit 7), just Lot 11 (Parcel A) of Tax Map 20, Lot 60, was sold to Washington Mutual Bank pursuant to a Judgment of Foreclosure and Sale of Alfreda Morrison's mortgage in docket MACSC-RE-2005-8
(c) Washington Mutual Bank specifically listed three of the four parcels of Tax Map 20 Lot 60 when conveying the property to Joyce Lizotte (Exhibit G)
(d) People interested in buying 4 First Avenue, see just Lot 11 listed specifically in the foreclosed mortgage with Washington Mutual (Exhibit L) asked the Town of Baileyville for Assistance om Friday, September 7, 2012 (Exhibit DLT-1).
(e) On 9/8/2018 the town reconfigured the property cards (Exhibit W) and the new account is listed as account "1462".
(f) This new account got a comment card explaining how it was created (Exhibit DLT-1).
(g) The Tax Assessor writes a letter (Exhibit X) to attorneys for Joyce Lizotte's bank, explaining how the Tax Assessor's Agent re-interpreted deeds, and how the assessor had switched the property records around due to her re-interpretation of the deeds and events, but failed to mention the town's merger of the lots or at whose request (James Bohanon, see Exhibit DLT-1 top paragraph) she looked into this matter in the first place.
(h) The heirs of Alfreda Morrison, working with Attorney John Mitchell, agree to sign a deed to Alton Bohanon to clear up the cloud of title provided that said deed is only registered after 1) the main house is first purchased by Alton Bohanon and 2) the Morrison family is paid a substantial amount given that they have been told they own the property in question ($5000.00) (Exhibits AFF-BR, P, and Q.)
(i) Attorney John Mitchell got the deed registered for Alton Bohanon, despite the conditions in place, with no consideration given (Exhibits AFF-BR, P, and Q) and without Alton Bohanon purchasing the main house.
(j) Plaintiff purchased "Lot 11" from BNY Mellon (see Exhibit I), and obtained a quitclaim deed from Joyce Lizotte for all of what was granted by Washington Mutual (Exhibit H).
(k) Plaintiff purchased Lot B from the Heirs of Alfreda Morrison (Exhibits P and Q)
(l) Plaintiff's deed to Parcels C and D was upgraded from quitclaim to Warranty Deed – "Special Warranty" (quitclaim with covenants) from Lizotte and assignment of warranty from WaMu (Exhibit H-1)
(m) Order on Summary Judgment in RE-2016-13 (Exhibit 7), evicted Plaintiff from Parcels C and D.

14. During the deposition of the Baileyville Town Manager Richard Bronson in case MACSC-2015-20 (Exhibit J), it was revealed that the lot mergers occurred if the lots were under

6
COMPLAINT

common ownership and further suggested a professional title search be done to confirm this fact. Richard Bronson also confirmed that Exhibit A (the same Exhibit A as in this case) was from the same series of maps as were of file in the Baileyville Offices. The Survey Plan by CES, Exhibit K, was able to confirm this fact, and states the configuration of the property at 4 First Avenue, known as Tax Map 20 Lot 60 under ownership of Alfreda Morrison, matches the depiction of said Lot 60 in Exhibit A.

15. Lot 11, Parcel A, was sold to Washington Mutual Bank pursuant to a Judgment of Foreclosure and Sale of Alfreda Morrison's mortgage in docket MACSC-RE-2005-8. The entire foreclosure appears to have been uncontested from the court records. Exhibit F, the "REPORT OF DISBURSEMENT OF PROCEEDS OF FORECLOSURE SALE" from MACSC-RE-2005-8, shows that Washington Mutual Bank purchased the property on January 24, 2006. Exhibit F also includes the "Affidavit of Publication" with the actual "Notice of Public Sale" that advertised "The property is located at 4 First Avenue, Baileyville, Maine, Tax Map 20, Lot 60."

16. A short history of the Parcels is in order. In 1962, Old Lot 11 was conveyed to Harold and Alfreda Morrison in Book 580 Page 232, and in this complaint it will be referred to as "Parcel A". Over the years three more adjacent parcels were conveyed to them as well. In 1972 "Parcel B", a ten (10) foot wide strip one hundred (100) feet long was created by acquiring the double lot next door on Broadway, and then selling all but that 10 foot strip, see Book 771, Page 151 for the original conveyance of Old Lots 29 & 31, and Book 774, Page 193, for the creation of said strip. In 1973 "Parcel C", Old Lots 9 & 10, were conveyed in Book 795, Page 180. In 1980 they are conveyed "Parcel D", which consists of one-half of the Unbuilt Washington Street along Old Lots 9, 10, 11 (lot 25 feet wide, 150 feet long) by the Town of Baileyville in Book 2056, Page 103. See Figure 1 for a diagram of these parcels on that block of

First Avenue using the lot number notations of the Loud Plan.



Figure 1. The Four Original Parcels of Tax Map 20, Lot 60.

17. On February 8, 1996, in a Home Equity Mortgage Deed with St Croix in Book 2095, Page 194, Alfreda Morrison, now a widow, indicates the use of the property as a single property conveyed by three deeds. Ownership of the 10ft wide side lot, Parcel B, is not mentioned. In her own words in that deed, Alfreda Morrison declares:

> This is the same property conveyed to me by three (3) deeds, the first having been dated May 28th, 1962, recorded at the Washington County Registry of Deeds in Book 582, Page 33, the second dated May 2nd, 1973, recorded in said Registry in Book 795, Page 180, and the third is dated February 22nd, 1980, to be recorded in said Registry.

18. The Baileyville, Me., Land Use Regulation Ordinance (Oct 1, 1997) (Exhibit B), spells out the details of what happened when the ordinance was adopted with regards to lot mergers of undersized lots under common ownership (See Section 2(E), Exhibit B's Page 6.)

19. Alfreda Morrison got a Mortgage from North American Mortgage Co, said mortgage deed dated June 28th, 2000 and recorded in Book 2442, page 183 (Exhibit L, the "foreclosed mortgage".). The legal description on the mortgage subparagraph (A) is that of the base Lot 11, but there were several other inclusion clauses and subparagraphs on the mortgage. This mortgage, a financial instrument that also appears to be signed under seal, contained a general warranty as well as a promise there were no undisclosed encumbrances. The encumbrance of the Lot Mergers does not appear to have been disclosed to WaMu, and by Exhibit J (deposition pages 12-13) the town had no idea as of the deposition as to whether or not the merger had occurred. This mortgage was foreclosed as revealed in said Registry of Deeds Book 3107, Page 221 (judgment entered on 08/30/05 and the appeal process expired 01/27/06, see Exhibit F). WaMu then conveyed Parcels A, C and D to Joyce Lizotte (Exhibit G.)

20. Plaintiff was granted Parcels C and D by Joyce Lizotte by deeds included herein as Exhibits H and H-1, and Parcel A (Lot 11, see Exhibit I) by BNY Mellon. Therefore, plaintiff is now the current "remote" grantee for all three parcels granted by WaMu's Warranty Deed to Joyce Lizotte either through her directly or under her grantee BNY Mellon (through foreclosure.)

### Procedural History related to Plaintiff's Chain of Title

21. Washington Mutual Bank foreclosed on Alfreda Morrison's mortgage in Washington County (in **MAC**hias, Maine) Super Court Docket **MACSC**-RE-2005-8 (and subsequently conveyed to Joyce Lizotte, see Exhibit G.)

22. Bank of NY Mellon foreclosed on Joyce Lizotte in Washington County District

Court in Calais, District Court Docket RE-2012-8 (and subsequently conveyed to Plaintiff Steven Kneizys, see Exhibit I.)

23. Plaintiff sought to Quiet Title on just Parcel B in MACSC-RE-2015-20, naming JP Morgan Chase Bank, NA, ("Chase") as defendant and also served Elizabeth Rice, Norman Morrison Jr, and Franklin Morrison (Heirs of Alfreda Morrison). Heirs conveyed any interest (Exhibits P and Q.) Chase waived Subject Matter Jurisdiction of 12 U.S. Code § 1821(d), and after putting in a disclaimer to Parcel B the case was dismissed by Joint Stipulation.

24. Plaintiff sought to assert title to Parcels A, B, C and D in MACSC-RE-2016-13, but only successfully asserted title to Parcels A and B.

25. Plaintiff appealed MACSC-RE-2016-13 to the Maine Supreme Judicial Court, as the trial court ruling declared the heirs not to be parties (despite having been served, answered, and having been part of the Motion to Join Parties, Exhibit 3.) Also, there was Declaratory relief regarding the activities of Washington Mutual and they were not a party. The Supreme Judicial Court, docket Was-17-269, affirmed the trial court ruling in Memo of Decision Mem 18-4.

26. Plaintiff named Chase as defendant in MACSC-RE-2018-6 as a result of the eviction in MACSC-RE-2016-13 (for, inter alia, Breach of Covenants of Warranty and Quiet Enjoyment,) but this time they filed an MTD based on Subject Matter Jurisdiction of 12 U.S. Code § 1821(d). Days later the Plaintiff converted the claim to a FIRREA claim with the FDIC ("REQUEST NUMBER: 2010980900" received by the FDIC on September 10, 2018), and dismissed the State action with Chase without prejudice by Stipulation before an answer to the complaint was submitted. The Plaintiff and defendant FDIC were unable to successfully find a path to a resolution in this matter, and the FIRREA claim's extension of time expired June 28, 2019 (confirmed by letter from the FDIC to Plaintiff dated June 27, 2019.)

## FIRST AND SECOND CAUSES OF ACTION
## BREACH OF COVENANT OF WARRANTY
## BREACH OF COVENANT OF QUIET ENJOYMENT

27. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

28. There are a variety of personal covenants and future covenants that a Warranty Deed conveys.[3] The Maine Supreme Judicial Court stated in *Lloyd v. Estate of Robbins*, 2010 ME 59, ¶ 20-21, 997 A.2d 733:

> [¶ 20] The covenants of warranty and quiet enjoyment are usually considered together. Creteau, *Maine Real Estate Law* 191. They represent that the grantee will enjoy the premises without disturbance and that the grantor will warrant and defend the premises against all lawful claims by third persons.....
>
> [¶ 21] Because these covenants run with the land, the common law required a grantee to prove eviction in order to recover for breach of the covenants. ...

Plaintiff was unable to obtain exclusive possession of Parcels C and D, and was formally evicted by the decision in MACSC-RE-2016-13 (See Exhibit 7) that found the McLaughlins (claiming Parcels C and D under the heirs of Alfreda Morrison, whose mortgage for Parcel A WaMu foreclosed on) had superior title as a matter of law.

29. There can be no quiet possession and enjoyment of Parcel A (Lot 11, with the house) because of the Lot Merger. Now that it is non-conforming (at 5000 sq ft, minimum of 10,000 needed, see Exhibit B Page 5 Section 2 et seq.), the only way it could be used is by either including the other parcels that were merged or by a variance. A variance, however, is not possible, as State Law 30-A M.R.S.A §4353 4-C and The Local Land Use Ordinance, Exhibit B Page 25 Section 7(H)(2)(c)(2)(c), appear to make a variance inapplicable. Clearly, if only Lot 11 (Parcel A) was conveyed to WaMu, this entire problem is a result of this conveyance (Exhibit L),

---

3 "The covenant of seisin, the covenant of the right to convey, the covenant of warranty, the covenant of quiet enjoyment, and the warranty of freedom from encumbrances accompany every warranty deed...", *McCormick v. Crane*, 2012 ME 20, ¶ 6, 37 A.3d 295

and practically may only be solved by some kind of reformation of that deed for there to ever be quiet enjoyment of the property.

30. The Heirs of Alfreda Morrison, if they knew that Parcels C and D were encumbered by the Land Use Ordinance or that it was the intention and belief of themselves or Alfreda Morrison that all Parcels were part of the mortgage, then it would be a potential tort for them to independently convey them to anyone who was not owner of Lot 11. The opposite appears to be the case – it appears they were trying to keep the parcels together when they were working on the Deed to convey to Alton Bohanon (Exhibit R.) In addition to their averement in Exhibits P (pg 2, para 2) and Q (pg 2 para 5) that the parcels went together in the foreclosure sale to WaMu, Elizabeth Rice also goes into detail (Exhibit AFF-BR) about how the deed (Exhibit R) to Alton Bohanon was never paid for and never released for recording. They are, from Plaintiff's perspective, cooperating with defending the General Warranty of Alfreda Morrison in Exhibit L (pg 2 second to last paragraph,) but a little bit more work remains to be done.

31. WaMu obviously also believed they owned Parcels C and D when they conveyed them to Joyce Lizotte in Exhibit G via Warranty Deed. Plaintiff is the "remote grantee" not only of Alfreda Morrison's General Warranty but that of WaMu in Exhibit G via conveyance from Lizotte to Plaintiff in Exhibits H and H-1

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF MARKETABILITY OF TITLE

32. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

33. The cloud of title over the parcels, the eviction in MACSC-RE-2016-13, and the continuing questions of usability of the property (and thus it's Merchantability), make it unmarketable. See *Gauthier v. Gerrish*, 116 A.3d 461 (2015), 2015 ME 60, ¶ 13, citing

*Depositors Trust Co. v. Bruneau*, 144 Me. 142, 14647, 66 A.2d 86 (1949) ("Every vendor in the absence of provision otherwise in the contract, impliedly contracts to tender a marketable title.")

### FOURTH CAUSE OF ACTION
### DEED REFORMATION

34. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

35. As per above, it is obvious that WaMu believed it owned Parcels C and D. Elizabeth Rice aveers that her mother had a similar belief, see Exhibit DEP-ER (Exhibit page 5, deposition page 7 line 24 to deposition page 8 line 13, discussing Alfreda Morrison's foreclosure sale.) This is a statement against interest, since Alton Bohanon never paid for the deed (as described in Exhibit AFF-BR regarding Exhibit R) it would be in the Morrison family's financial interest to seek to collect $5000 rather than supporting Plaintiff in this matter. In addition, the heirs step into the shoes of the late Alfreda Morrison.

36. Exhibit R clearly points out that WaMu had declared an interest in Parcels C and D, there can be no grantees in interest who are purchasers in good faith without knowledge of the prior claim for those parcels. With both sides to Exhibit L, the FDIC for WaMU, and the heirs of Alfreda Morrison (her daughter Elizabeth Rice and her grandson's Norman Morrison Jr and Franklin Morrison) joined as parties to the action, it is now ripe for Deed Reformation.

### FIFTH CAUSE OF ACTION
### DECLARATORY RELIEF

37. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

38. Defendant James Bohanon was involved with the original acquisition of Parcels C and D. He went to the town office to inquire about the property, and that inquiry led to the Town

splitting off Parcels C and D from "Lot 60" to "Lot 60A" (See Exhibit DEP-JB Pg 3 Deposition page 4 lines 9-20 and Exhibit DLT-1 top paragraph.) While agreeing that there was a $5000 payment that Alton was going to give to Elizabeth Rice (Exhibit DEP-JP, Deposition page 8 Lines 8-13) he refutes that it was due before recording. He also refutes Betty Rice's claim that there was no payment, instead he claims that because Alton Bohanon scratched off gambling debts[4] from the book James Bohanon had at the house. Either way, unpaid for or Alton Bohanon and his agents just helping themselves to the deed (Exhibit R) is unlawful.

39. It is true that if WaMu and Alfreda Morrison had not mutually made the mistake of not sufficiently describing the the parcels in Exhibit L's property description that we would not be here. It is equally true that if Alton Bohanon and his agents had not helped themselves to the Parcel in question (C & D) that this situation would have already corrected itself through quitclaim deeds (Exhibits P and Q.) If Elizabeth Rice's claims in Exhibit AFF-BR are found by this court to be from a fraud, it affects the FDIC's ability[5], in the shoes of WaMu, a financial institution, to cure this on its own by simply executing documents to obtain clear title to Parcels C and D which, by Warranty Deed estoppel would cause the parcels to be delivered to Plaintiff. .

40. We know that Alton Bohanon and his agents (attorney John Mitchell and his wife Lorraine Mitchell) helped themselves to the property for several reasons beyond the claim/admission of James Bohanon that he father was collecting a gambling debt. First of all, on there was no probate on Parcels C and D that were inherited from Alfreda Morrison. John Mitchell's law office knows about the Probate Requirement (see 33 M.R.S. § 775 for example)

---

4 *Id*, lines 2-3. James Bohanon's attorney actually produced a photocopy of some of these pages that were scratched off, see Exhibit 1, but no scratch-off is visible. Given that gambling is illegal in Maine, and a collection of such a debt is potentially an unlawful debt collecion under 18 U.S.C. § 1961 et seq, it is likely that this admission by James Bohanon and follow-up by his attorney did not contemplate that this matter would be going before a Federal Court.
5 18 U.S.C. § 3293(2), substituted a 10-year statute of limitations in cases of fraud "affecting a financial institution".

because earlier that year we see a Deed of Distribution from their office (Exhibit 9 for some unrelated property) dated April 17, 2012. We know John Mitchell knows how to fill out a real estate tax form declaration because for another unrelated property (Exhibit 10) he filled out Exhibit 11 on October 10, 2012, with one Grantor and one Grantee instead of his law offices doing it like they did on the form in controversy, Exhibit Y. And, on Exhibit Y, Lorraine Mitchell knew (or should have known) that she could not be both an Agent for the Grantors if she is the Notary[6] even if the Grantors request it, and of course under Statute of Frauds to act as an agent in a Real Estate Transaction it requires a written agreement. There are plenty of reasons why this deed from the Elizabeth Rice and Norman Morrison, Sr to Alton Bohanon (Exhibit R) should be questioned and in fact declared either 1) Fraud in the Factum and thus a nullity, 2) an incorrectly registered instrument in the Washington County Registry of Deeds that is a nullity, or 3) Given a reformation under Count 3 that the Heirs had no ability to issue and is thus null and void.

41. Without Declaratory Relief and/or Reformation, it leads to an unjust enrichment of Defendant James Bohanon for having sold Parcels C and D when his father Alton never paid for them and they were not released for recording by Betty Rice and Norman Morrison, Sr.

## PRAYER FOR RELIEF

42. In the event of Mis-Joinder or Non-Joinder, the Plaintiff asks the court order that parties be joined as needed to effect substantial Justice as per Federal Rules of Civil Procedure.

43. Because the entire matter may be cleared up by the Heirs of Alfreda Morrison and the FDIC supporting Plaintiffs efforts to put before the court the Equitable Remedy of Reformation, and the Court Ordering such, it seems (combined with Declaratory relief) this is the place to start. I ask the Court to 1) Reform Exhibit L to also include Parcels C and D, and 2) to

---

6 See Exhibit 4, Pages 24-25, Booklet Pages 18-19, Section "Conflicts of Interest", esp. first two Q & A.

Case 2:19-cv-01499-GMN-DJA Document 1 Filed 08/26/19 Page 16 of 17

declare Exhibit R and all "downstream" deeds to be void, and 3) Declare Plaintiff the sole owner of Parcels A, B, C and D.

44. If Parcels C and D cannot be delivered to Plaintiff, in that event Plaintiff asks the court bifurcate Liability and Damages for that loss. I ask the court to first Determine liabilities for the loss of Parcels C and D and to Parcel A related to it being an undersized lot through the actions of predecessors in title or other actors, as well as costs, expenses, professional fees, etc. for the current and prior assertions of title. Once the court has determined who is liable for what, then it is appropriate to get an appraisal based upon court-ordered instructions and to tally up the costs. Plaintiff realizes that, in the event that Parcels C and D are delivered, title would be successfully defended and that no costs would be awarded.

45. The Plaintiff also requests any other relief the court deems just and equitable.

Respectfully submitted this 23rd day of August, 2019.

Steven Kneizys, Plaintiff, Pro Se

Steven Kneizys
2 Muirfield Lane
Lebanon, NJ 08833
(610) 256 1396

THE PLAINTIFF RESERVES THE RIGHT TO A TRIAL BY JURY.

